Brian C. Brook (NJ Bar No. 050442013)
Brook & Associates, PLLC
100 Church St., Fl. 8
New York, NY 10007
(212) 256-1957
brian@brook-law.com
*Attorney Pro Se and for Defendants Brook & Associates, PLLC and Clinton Brook & Peed*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ERIC INSELBERG AND INSELBERG INTERACTIVE, LLC<br><br>       Plaintiff,<br><br>v.<br><br>BRIAN C. BROOK, ESQ.; TIMOTHY R. CLINTON, ESQ.; CLINTON BROOK & PEED; BROOK & ASSOCIATES, PLLC; CLINTON & PEED; and JOHN DOES, ESQS., 1-10 and JANE DOES, ESQS., 1-10 (a fictitious designation for presently unknown licensed attorneys, professionals and/or unknown persons or entities), jointly, severally and in the alternative,<br><br>       Defendants. | Case No. 20-CV-10789 |

**BRIEF IN SUPPORT OF THE BROOK DEFENDANTS' MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................... 1

FACTS ............................................................................................................................................ 3

ARGUMENT .................................................................................................................................. 3

I.   Applicable Law ...................................................................................................................... 3

  A.   The Rule 12(B)(6) Standard ............................................................................................ 3

  B.   The Elements of the Asserted Claims ............................................................................. 4

   1.   Negligence ................................................................................................................ 5

   2.   Malpractice ............................................................................................................... 5

   3.   Breach of Fiduciary Duty ......................................................................................... 5

   4.   Negligent Misrepresentation .................................................................................... 6

   5.   Breach of Contract ................................................................................................... 7

II. None of Inselberg's Vague and Conclusory Allegations Supports a Cause of Action ............. 7

  A.   The Giants Case Fee Dispute Allegations Support No Cognizable Claim ..................... 7

  B.   The Bisignano Case Fee Dispute Allegations ................................................................ 9

  C.   The Bisignano Case "Settlement" Allegations ............................................................. 11

  D.   Brook's Efforts to Get Paid for Post-2018 Work to Recover Memorabilia Do Not Support Any Claims ............................................................................................................... 13

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*AT & T Credit Corp. v. Zurich Data Corp.*, 37 F.Supp.2d 367 (D.N.J.1999) ................................ 7

*Bishop v. United States Dept. of Agriculture*, 725 Fed. Appx. 165 (3d Cir. 2018) ........................ 9

*Columbus LTACH Mgmt., LLC v. Quantum LTACH Holdings, LLC*, No. CV 16-6510, 2018 WL 2455922 (D.N.J. May 31, 2018) ................................................................................................ 6

*Conklin v. Hannoch Weisman*, 678 A.2d 1060 (N.J.1996) ............................................................ 5

*Froom v. Perel*, 377 N.J. Super 209 (App. Div.), certif. denied, 185 N.J. 267 (2005) ................. 13

*Gilles v. Wiley, Malehorn & Sirota*, 783 A.2d 756 (N.J.Super.Ct.App.Div.2001) ........................ 5

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ...................................... 4

*In re Westinghouse Sec. Litig.*, 90 F.3d 696 (3d Cir.1996) ............................................................ 6

*Kendall v. Visa*, 518 F.3d 1042 (9th Cir. 2008) ............................................................................. 4

*Lopez-Siguenza v. Roddy*, No. CIV. 13-2005 JBS/JS, 2014 WL 4854452 (D.N.J. Sept. 30, 2014) ................................................................................................................................................ 6, 7

*Lum v. Bank of Am.,* 361 F.3d 217 (3d Cir.2004) .......................................................................... 7

*McGrogan v. Till*, 771 A.2d 1187 (N.J.2001) ................................................................................ 5

*Olds v. Donnelly*, 150 N.J. 424 (1997) ........................................................................................ 13

*Prasad v. Twp. of Toms River Police Dep't*, No. CV-167761, 2017 WL 4077324, at *5 (D.N.J. Sept. 14, 2017) ............................................................................................................................ 9

*Ramada Worldwide, Inc. v. Kim*, Civ. 09–4534, 2010 WL 2879611 (D.N.J. July 15, 2010) ........ 7

*Robinson v. Vivirito*, 217 N.J. 199, 86 A.3d 119 (2014). .............................................................. 5

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786 (3d Cir.1984) ..................... 7

*Sommers v. McKinney*, 287 N.J. Super. 1 (App. Div. 1996) ................................................... 5, 13

*St. Pius X House of Retreats, Salvatorian Fathers v. Diocese of Camden*, 443 A.2d 1052 (N.J.1982) ................................................................................................................................... 5

*Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82 (3d Cir. 2015) ...................................... 7

*Ware Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, No. CV1813895WHWCLW, 2019 WL 1470129 (D.N.J. Apr. 3, 2019) .................................................................................................. 6

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................................ 3

Federal Rule of Civil Procedure 9(b) ............................................................................................ 14

**PRELIMINARY STATEMENT**

This case is about a client who feels it is unfair that he had to pay for years of quality legal services in multiple cases. Now he files a lawsuit chock full of absurd allegations (e.g., that one case never got close to a trial date before settling, omitting to allege when either date was). Even if presumed to be true, his vague list of gripes fails to establish any viable cause of action.

On the morning of May 14, 2018, the media was in a frenzy over the start of the memorabilia fraud trial against Eli Manning and the New York Giants (the "Giants Case"). More than four years after being first filed, the trial date finally arrived and the parties appeared in court, as documented by a local journalist:



Brian C. Brook, attorney for the plaintiff, addresses the court at the start of the Eli Manning / NY Giants fraud trial which is being heard in Bergen County Superior Court on Monday, May 14, 2018. Brook, from the law firm Clinton Brook & Peed, filed the lawsuit in 2014 on behalf of a NJ memorabilia dealer who claims Manning and the Giants sold bogus 'game-used' equipment to unsuspecting collectors. (Andrew Mills | NJ Advance Media for NJ.com)

*See* https://www.nj.com/bergen/2018/05/eli_manning_memorabilia_fraud_trial_postponed.html. Jury selection was postponed due to the death of a defense lawyer's mother. Before leaving the

courtroom, the defendants requested a settlement conference with the judge. By the end of that same day, the case was settled on confidential terms.

Plaintiffs Eric Inselberg and Inselberg Interactive, LLC were two of the four plaintiffs in the Giants Case. Defendants, through their former law firm, Clinton Brook & Peed, were lead counsel in that matter. Defendants also represented Plaintiffs in another lawsuit in an attempt to recover collateral that had secured a debt to a third party (the "Bisignano Case").

After the Giants Case settlement, Inselberg refused to pay the legal fees he owed under a contingent fee agreement that provided for a 40% fee "if a settlement is reached anytime from the trial date forward." Ex. A ¶ 13. The Amended Complaint acknowledges that the "[t]he case was assigned a trial date," but claims that the case never really got close to trial. *Id.* ¶ 16. It omits to plead either the trial date or the settlement date to conceal the fact they were the *same date*.

The Amended Complaint also seeks to conceal the fact that Inselberg ultimately agreed to pay far less than 40% as part of a post-dispute agreement executed just days later in May 2018. *See* Ex. B. That document is dispositive and necessitates dismissal of Plaintiffs' claims relating to the Giants Case. Despite Plaintiffs' attempt at artful pleading, the omitted document is appropriately considered by this Court because it is integral to the Amended Complaint. Plaintiffs' claims that they overpaid in legal fees are necessarily based on this document because it is the document that shows what was actually paid. If this document is not considered, then Plaintiffs' claims must nonetheless be dismissed for failure to allege damages.

Around the same time that the Giants Case fee dispute was resolved, the parties also amended their fee agreement in the Bisignano Case, which was then on appeal to the New Jersey Superior Court Appellate Division. Again, a dispositive document was signed by Plaintiffs, and is essential to their claims, but was omitted from the Amended Complaint. Ex. D. Once again,

2

Defendants waived fees to which they were entitled to appease Inselberg—this time, almost 70% of the fee was waived. The Complaint, however, by omitting to allege what was actually paid, fails to plead plausible damages or a cognizable claim.

And to the extent Plaintiffs purport to allege "malpractice," it is bizarre, because a fee dispute is a contract matter; no professional judgment is involved. The closest the Amended Complaint comes to articulating an attack on any of Defendants' legal work is in three paragraphs concerning the Bisignano Case, where there is repeated reference to some kind of settlement agreement that was both rejected and not adequately documented. *See* Ex. A ¶¶ 23–25. It cannot be both, however: If the settlement was rejected, there was no negligence in documenting it; and if there was negligence in documenting it, that means it was accepted. All of this is complicated by the utter dearth of facts about the case, the settlement, and what was supposedly wrong (or right) with it.

Because Plaintiffs have failed to present their allegations in a comprehensible and plausible manner, including failing to indicate which causes of action relate to which facts, the Amended Complaint must be dismissed under Rule 12(b)(6).

## FACTS

Because the Amended Complaint is a hodgepodge of grievances untethered to any particular claims, each set of relevant facts is discussed in the pertinent argument section below.

## ARGUMENT

**I.     Applicable Law**

    **A.  The Rule 12(B)(6) Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a purported cause of action may be dismissed when a Complaint fails to state a claim upon which relief may be granted. To survive a motion to dismiss under Rule 12(b)(6), the Complaint must meet two criteria: 1) it must assert a

plausible claim, and 2) it must set forth sufficient factual allegations to support the claim. *Ashcroft v. Iqbal*, 556 U.S. 622 (2009). A Complaint must be facially plausible in order to survive a motion to dismiss. Importantly, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is appropriate if, after accepting all the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Id.* at 555. This requirement "calls for enough facts to raise reasonable expectation that discovery will reveal evidence of [the necessary elements]" of the plaintiff's cause of action. *Id.* at 556. However, a Court is not required to accept as true bare legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. A Complaint must state evidentiary facts which, if true, will prove the claim. *Kendall v. Visa*, 518 F.3d 1042, 1047 (9th Cir. 2008), otherwise it will be dismissed.

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (cleaned up, emphasis in original).

### B. The Elements of the Asserted Claims

Contrary to the first rule of drafting a complaint that will survive dismissal (even before *Iqbal* and *Twombly*), each of the five counts of the Amended Complaint contains nothing but bare legal conclusions. *See, e.g.*, Ex. A ¶¶ 32–43 (a dozen virtually identical, highly repetitive paragraphs doing nothing more than listing Defendants' names and asserting boilerplate legal conclusions). It is virtually impossible to guess at what facts are believe by Plaintiffs to support

the various claims. Accordingly, the argument section below addresses each set of facts and considers whether any of them state a claim under the five asserted causes of action. This section simply lays out the essential elements of each cause of action as a reference point.

### 1. Negligence

"The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." *Robinson v. Vivirito*, 217 N.J. 199, 208, 86 A.3d 119 (2014).

### 2. Malpractice

To recover for legal malpractice, a plaintiff must prove (1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff. *McGrogan v. Till*, 771 A.2d 1187, 1193 (N.J.2001); *Conklin v. Hannoch Weisman*, 678 A.2d 1060, 1070 (N.J.1996); *Sommers v. McKinney*, 287 N.J. Super. 1, 9-10 (App. Div. 1996). To fulfill his duties, an attorney must exercise "'that degree of reasonable knowledge and skill that lawyers of ordinary ability and skill possess and exercise.'" *Gilles v. Wiley, Malehorn & Sirota*, 783 A.2d 756, 760 (N.J.Super.Ct.App.Div.2001) (quoting *St. Pius X House of Retreats, Salvatorian Fathers v. Diocese of Camden*, 443 A.2d 1052, 1060–61 (N.J.1982)).

### 3. Breach of Fiduciary Duty

The Third Count alleges "professional negligence, carelessness, and breach of fiduciary relationship." It is far from clear how this is different from the first two counts, but affording Plaintiffs every possible benefit, it could be construed as a claim for breach of fiduciary duty.

"For a breach of fiduciary duty claim, the elements are: '(1) the existence of a fiduciary relationship between the parties; (2) the breach of the duty imposed by that relationship; and (3) damages or harm to the plaintiff caused by said breach.'" *Ware Indus., Inc. v. St. Paul Fire &*

*Marine Ins. Co.*, No. CV1813895WHWCLW, 2019 WL 1470129, at *5 (D.N.J. Apr. 3, 2019), *reconsideration denied*, No. CV1813895WHWCLW, 2019 WL 2367108 (D.N.J. June 5, 2019) (citing *SalandStacy Corp. v. Freeney*, No. CIV.A. 11-3439 JLL, 2012 WL 959473, at *12 (D.N.J. Mar. 21, 2012)).

Although the law of attorneys' fiduciary duties "is not well-differentiated from legal malpractice under New Jersey law," *Lopez-Siguenza v. Roddy*, No. CIV. 13-2005 JBS/JS, 2014 WL 4854452, at *6 (D.N.J. Sept. 30, 2014), such a claim may be stated when an attorney "intentionally violates the duty of loyalty owed to a client," *Packard–Bamberger & Co., Inc. v. Collier*, 771 A.2d 1194, 1203 (N.J.2001), and the disloyal conduct proximately causes "the suffering of a loss or damages," *Kanter ex rel. Estate of Schwartz v. Equitable Life Assur. Soc. of U.S.*, 363 Fed. App'x 862, 866 (3d Cir.2010). Examples of disloyal conduct include dishonesty and self-dealing. *Lopez-Siguenza*, 2014 WL 4854452, at *6.

### 4. Negligent Misrepresentation

"To establish a claim of negligent misrepresentation, a plaintiff must prove that (1) the defendant negligently provided false information; (2) the plaintiff was a reasonably foreseeable recipient of that information; (3) the plaintiff justifiably relied on the information; and (4) the false statements were a proximate cause of the plaintiffs damages." *Columbus LTACH Mgmt., LLC v. Quantum LTACH Holdings, LLC*, No. CV 16-6510, 2018 WL 2455922, at *5 (D.N.J. May 31, 2018) (internal quotation marks omitted) (quoting *McCall v. Metropolitan Life. Ins.*, 956 F. Supp. 1172, 1186 (D.N.J. 1996)).

Because a claim for negligent misrepresentation sounds in fraud, it must be pled with particularity under Rule 9(b). *See In re Westinghouse Sec. Litig.*, 90 F.3d 696, 717 (3d Cir.1996) (Even when "fraud is not a necessary element of a claim ... claims that do sound in fraud must be pled with particularity."); *see also Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85–

86 (3d Cir. 2015). "In order to satisfy Rule 9(b), plaintiffs must plead with particularity 'the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.' " *Lum v. Bank of Am.,* 361 F.3d 217, 223–24 (3d Cir.2004) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir.1984)), *abrogated in part on other grounds by Twombly,* 550 U.S. at 557 (2007). "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Id.* at 224.

### 5. Breach of Contract

"Under New Jersey law, a breach of contract claim requires three elements: (1) the existence of a valid contract; (2) a breach of that contract; and (3) resulting damage to the plaintiff." *Lopez-Siguenza*, 2014 WL 4854452, at *7 (citing *Ramada Worldwide, Inc. v. Kim*, Civ. 09–4534, 2010 WL 2879611, at *3 (D.N.J. July 15, 2010) (citing *AT & T Credit Corp. v. Zurich Data Corp.*, 37 F.Supp.2d 367, 370 (D.N.J.1999))).

## II. None of Inselberg's Vague and Conclusory Allegations Supports a Cause of Action

This is a lawsuit based on nothing but an individual's unreasonable anger that his attorneys wanted to get paid for their work. While one can sympathize with the financial burden required to redress wrongs through the judicial system with counsel, that is the nature of the system. Though these confusing and vague claims were filed based on unreasonable anger, they should be dismissed based on logical adherence to the pleading standards of *Iqbal* and *Twombly*.

### A.  The Giants Case Fee Dispute Allegations Support No Cognizable Claim

Defendants represented Plaintiffs and others in a lawsuit against the New York Giants football organization and others. Ex A ¶ 9. As part of that lawsuit, Defendants filed a complaint alleging that Inselberg suffered from PTSD. *Id.* ¶¶ 10–11. Brook allegedly sought to exploit

7

Inselberg's disorder for Defendants' financial advantage. *Id.* ¶ 12. Brook allegedly sought to have Inselberg pay a 40% contingency fee, which was the rate applicable "if the case was tried, or if a settlement [wa]s reached any time from the trial date forward." *Id.* ¶¶ 13–16. After the case was settled, Brook allegedly "threatened, coerced and exploited Plaintiff's PTSD to have Plaintiff agree to pay the 40% contingency fee." *Id.* ¶¶ 17.

These allegations fail to support any claim for a host of reasons. First, the Complaint omits critical details necessary to ascertain whether Brook did anything wrong: namely, the trial date and the settlement date. Without those facts, there is no way to ascertain whether the claims are plausible. This alone is grounds for dismissal. Similarly defective is the allegation of damages. Every claim purportedly asserted by Plaintiffs requires a showing of damages, which cannot be met without at least alleging whether, in fact, Plaintiffs paid CBP a 40% contingency fee.

Fortunately, this Court can properly consider and take notice of the omitted facts, which are matters of public record, and which show that the Giants Case was indeed settled on the trial date. *See* Clinton Brief at 10–12.[1] Since the settlement occurred at a time "from the trial date forward," the correct contingency fee was 40%. There was nothing wrongful about Brook seeking to have Inselberg pay his firm what it was owed.

The Final Accounting document signed by Inselberg on May 23, 2018 provides additional, independently sufficient grounds for dismissal of any claims predicated on the Giants Case fee dispute. The document shows that Brook's alleged effort to exploit Inselberg's PTSD to receive a 40% contingency fee failed because the final percentage was 35%, not 40%. Brook Cert. Ex. B at 2. Inselberg's refusal to agree to what Brook allegedly tried to coerce him to do shows that he was not injured by Brook's alleged conduct. However his purported PTSD may have affected him, it

---

[1] To avoid repetition, we incorporate by reference the arguments and evidence submitted by Defendants Timothy Clinton and Clinton & Peed, PLLC.

did not impair his ability to negotiate for his own benefit and to reject Brook's position that a 40% fee was due. The absence of injury means there is no cognizable claim.[2]

In addition, the Final Accounting reflects Inselberg's acknowledgment that he was advised to retain independent counsel and had the opportunity to do so. This decisively undercuts any argument that Inselberg might have thought that Defendants were acting in a legal capacity on his behalf when negotiating the resolution to the fee dispute.

For all of these reasons, Inselberg has nothing to complain about with respect to the Giants case, and certainly no colorable cause of action. The Giants Case fee dispute was resolved in 2018. The Final Accounting, which Inselberg signed, renders any claims based on the dispute frivolous.

### B.  The Bisignano Case Fee Dispute Allegations

The Complaint is so vague that it is impossible to tell whether a claim is asserted based on the Bisignano Case fee dispute. The Amended Complaint provides almost no information about the lawsuit filed by Plaintiffs against Frank Bisignano and his company, First Data Corporation. Apparently, the substance of the suit, and its procedural posture, is considered by Plaintiffs to be immaterial. To the extent that these allegations are intended to support a claim, they fail to amount to more than a list of disjointed grievances, many of which are simply mistaken, and disprovable by reference to the incorporated and integral documents.

Plaintiffs allege that the retainer agreement for the Bisignano Case "provided for a 20% contingency on debt reduction <u>and</u> an hourly rate – a facially unreasonable fee." Ex. A ¶ 22

---

[2] With respect to the alleged inadequate disclosure concerning the conflict of interest among the Giants Case plaintiffs, Ex. A ¶ 19, Inselberg fails to allege what was inadequate about the disclosure. He merely makes the bare assertion that it was inadequate, providing literally no basis on which this Court can say that the claim is plausible. *See id.* ("Brook failed to provide full disclosure to Plaintiff and to communicate adequate information about the material risks or available alternatives."). Moreover, there is no alleged injury or damages flowing from this allegedly inadequate disclosure. *See Bishop v. United States Dept. of Agriculture*, 725 Fed. Appx. 165, 167 (3d Cir. 2018) (holding that a plaintiff is "required to plead facts that would plausibly support an inference that there was a causal connection between" the alleged conduct and the alleged injury).

9

(emphasis in original). Plaintiffs further allege that "Defendants engaged in egregious overbilling and duplicate billing." Ex. A ¶ 22. They do not elaborate on what this supposedly entailed, or how it affected the actual amount of fees paid.

     None of this is adequate grounds to establish a claim. The typical claim in a fee dispute is breach of contract, but here there is no allegation about how much Inselberg actually paid versus how much he should have paid.

     It is worth noting that this claim seems to have been particularly ill prepared. Plaintiffs' counsel incorrectly parsed the language of the engagement agreement, which clearly provided for one "or" the other, "whichever is greater." Brook Cert. Ex. C at 2. Moreover, the hourly rate was itself contingent: it would only be charged after a "successful outcome," and it was capped at the amount of any recovery for Inselberg. *Id*. An hourly rate is objectively reasonable and fairly standard, and it is not rendered otherwise by the fact that it is contingently triggered upon a successful outcome; quite the opposite, this engagement agreement was much more favorable to Inselberg than a standard hourly rate. At the same time, it did provide some protection for the lawyers in this situation where there was a strong possibility that the recovery would be limited to debt relief, as it ultimately was.

     Even though the hourly fee agreement was reasonable, Plaintiffs did not pay an hourly fee. The hourly fee was calculated at $576,909. *See* Brook Cert. Ex. D. Instead, after even more aggressive haggling by Inselberg, CBP "agreed that notwithstanding the [retainer] agreement's obligation to pay more," Inselberg would pay only $177,103.57—roughly 30% of the amount he actually owed CBP for its years of work. *Id.* at 1–3.[3]

---

[3] Similar to the Final Accounting document in the Giants Case, the May 31, 2018 invoice in the Bisignano Case is one that Inselberg signed because it amended the original retainer agreement to substantially reduce the amount of the fee that was due. By amending the retainer agreement, this document is integral to any claim based on that retainer agreement, which is expressly referenced in the Amended Complaint. Moreover, it shows what the hourly

10

The Bisignano fee allegations do not support any cause of action.

### C. The Bisignano Case "Settlement" Allegations

The closest Inselberg comes to actually critiquing any legal work by Defendants is in connection with the supposed settlement of the Bisignano Case, but the absence of any factual information concerning the case or the supposed settlement terms renders all of it incomprehensible. Such bare conclusions cannot possibly demonstrate the existence of any plausible causes of action.

The Amended Complaint alleges two inconsistent conclusions regarding the supposed settlement. First, it claims that "Brook failed to document a settlement agreement by which certain valuable sports memorabilia was to be returned to Plaintiff." *Id*. ¶ 23. Then it claims that Brook "advised Plaintiff to reject a settlement agreement that would have greatly benefitted Plaintiff and negligently advised Plaintiff of his prospects of success in the litigation." *Id*. ¶ 24. It also asserts that "Plaintiff would have settled the case absent Brook's negligent advice." *Id*. ¶ 25.

While alternative pleading is generally permitted, these allegations are so vague that it is impossible to find a plausible claim under either theory. How could Brook have failed to document a settlement agreement and at the same time have caused Inselberg to reject a settlement agreement? Was there a settlement or was there not a settlement? Was the settlement that was not documented different than the one that was rejected? When were these supposed settlement proposals or agreements made? The list of unanswered questions could go on and on, and all of these questions must be answered in order to understand what exactly is being alleged. The vagueness problem necessitates dismissal regardless of whether these allegations are characterized as alternative theories.

---

billings were that Inselberg only vaguely references in his Complaint. This document should therefore be considered without converting this into a motion for summary judgment.

The negligent documentation theory is far too underdeveloped to pass master. There is nothing in the Amended Complaint to make that claim comprehensible, let alone plausible. Moreover, the public record reveals that there was no settlement. It was a final order dispensing with the need for a trial because the Defendants essentially capitulated as to all remaining issues. Plaintiffs expressly refused to consent to the entry of the order, in part because they wanted to retain their right to appeal an earlier legal ruling that had capped their potential recovery.

On the negligent advice to reject a settlement theory, the allegations are simply too conclusory to demonstrate that there was any plausible breach of duty or injury to Inselberg. There is no way to determine from this pleading that whatever settlement was supposedly rejected was more favorable to Inselberg than the result that was obtained. Even if conclusory assertions were permitted after *Iqbal* and *Twombly*, is not enough to allege merely that Inselberg turned down a settlement that "would have greatly benefitted" him. Rather, the complaint must allege that this settlement was materially more beneficially than the result that was achieved.

As is shown by the amendment to the Bisignano engagement agreement, Ex. D, Inselberg obtained a significant amount of debt relief thanks to Defendants' legal work prior to May 2018. *See also* Ex. E at 2 (final order showing that Bisignano agreed to eliminate the entire amount of the debt, return memorabilia held as collateral, and dismiss counterclaims asserted against Inselberg).[4] The Complaint fails to show that Inselberg was ever offered anything better than that.

Moreover, no facts are proffered to establish the existence of <u>any</u> financial losses. In order to establish the requisite causal connection, Inselberg must enunciate a factual and legal basis to support a finding that Defendants' alleged negligent conduct was a substantial factor in causing

---

[4] The existence of counterclaims by Bisignano against Inselberg to try to recover the unpaid debt is another reason why an hourly fee arrangement was reasonable, since defense work is not something that can be compensated by a percentage of a recovery. This fact makes Inselberg's Bisignano fee dispute allegations all the more implausible.

12

his damages. *Froom v. Perel*, 377 N.J. Super 209 (App. Div.), *certif. denied*, 185 N.J. 267 (2005). The burden of proving the causal relationship as well as the existence of damages caused by the breach of duty cannot be the product of "mere conjecture, surmise or suspicion." *Sommers*, 287 N.J. Super. at 10. In other words, Inselberg must have sustained actual, as opposed to merely speculative damages. *Olds v. Donnelly*, 150 N.J. 424, 437 (1997). No facts have been alleged by Plaintiff to establish the nature or extent of such damages, and the existence of such damages is left to pure speculation. Without so much as specifying the delta between what he supposedly turned down and what he got, it is impossible to find any plausible causation theory.

### D. Brook's Efforts to Get Paid for Post-2018 Work to Recover Memorabilia Do Not Support Any Claims

Lastly, the Amended Complaint alleges facts about Brook's efforts to get paid for his work on the part of the Bisignano case concerning post-judgment efforts to recover certain items of memorabilia, including the recently decided appeal that directed Inselberg to institute a new action to obtain relief. Ultimately, this dispute was the proverbial straw that broke the camel's back, causing Inselberg to seek to relitigate every grievance he ever had with Defendants.

The Amended Complaint begins by claiming that "Brook agreed to waive further fees to obtain Plaintiff's memorabilia." Ex. A ¶ 26.[5] It alleges that Brook "threated to sue Plaintiff for legal fees," which is inconsistent with the previous allegation. Ex. A ¶ 27.

It further alleges that Brook "also threatened Plaintiff with various false allegations," without bothering to say what those are. As noted, the fourth count is a negligent misrepresentation claim, but the Amended Complaint declines to bother with stating what the misrepresentation was,

---

[5] The allegation that this supposed waiver was an acknowledgment of malpractice, *id.*, is the kind of bare conclusion that courts must ignore. Even if the Complaint alleged that Brook had explicitly admitted to committing malpractice, that would be no substitute for pleading *facts* that show that such a claim is supported as a matter of law.

13

let alone what was negligent about it. This fails to meet the bar for bare notice pleading under Rule 8, much less the heightened bar for pleading under Rule 9(b).[6] *See supra* Part I(B)(4).

Threatening to sue someone to collect unpaid fees is not a basis for any cause of action against an attorney. Inselberg was surely upset that his relationship with his lawyer of over six years had broken down, but that does not mean that he has suffered any cognizable injury that would support a claim.

If Brook indeed agreed to work for Inselberg for free, as Inselberg claims, even after CBP reduced their fees on two occasions, then Inselberg will have a defense against Brook's attempt to collect the unpaid fees. This allegation does not support a cause of action by Inselberg, however. Nor has Inselberg sought a declaratory judgment that he does not owe any fees; that would be a viable claim, but it is not one that appears in the Amended Complaint.

Inselberg also complains that he "is required to institute a separate lawsuit to enforce the settlement negligently documented by Brook." Ex. A ¶ 27. There is no explanation of what the circumstances were that led to him being so "required," and that makes any claim based on that as a supposed injury meritless.

To be sure, it is difficult to hold back on providing additional facts concerning what led to the current situation, as those facts would further undermine Inselberg's claims. But that is not the defense's burden, at least not at this stage.[7] Inselberg's burden to plead more than vague conclusions and reiterate the legal elements of the claims is not a particularly heavy one. But he most assuredly failed to meet that burden.

---

[6] The fact that this lawsuit was originally filed in state court is no excuse for the failure since New Jersey state courts likewise require such claims be pled with particularity.

[7]

14

## CONCLUSION

For the foregoing reasons, Plaintiffs' Amended Complaint should be dismissed in its entirety.

/s/ Brian C. Brook
Brian C. Brook (NJ 050442013)
Brook & Associates, PLLC
100 Church St., Fl. 8
P.O. Box 5084
New York, NY 10007
(212) 256-1957
brian@brook-law.com

*Attorney Pro Se and for Defendants Brook & Associates, PLLC and Clinton Brook & Peed*

Date:  August 26, 2020